953 F.Supp. 296 (1997)
Pat McHUGH, Plaintiff,
v.
PHYSICIANS HEALTH PLAN OF GREATER ST. LOUIS, INC., et al., Defendants.
No. 4:96CV662 CDP.
United States District Court, E.D. Missouri, Eastern Division.
February 6, 1997.
*297 Robert F. Ritter, John G. Simon, Jeffrey J. Lowe, Gray and Ritter, John J. Carey, Joseph P. Danis, Carey and Danis, St. Louis, MO, for plaintiff Pat McHugh.
Tammy S. King, Charles A. Newman, Roman P. Wuller, Diane M. Hoelzl, St. Louis, MO, for defendants Physicians Health Plan of Greater St. Louis, Inc., and Physicians Health Plan of Midwest, Inc.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on plaintiff's motion to remand and on defendants' motion to dismiss. Plaintiff asserts that defendants failed to timely file their notice of removal from state court and, alternatively, that there is no basis for federal jurisdiction in this matter under the Employee Retirement Income Security Act, as alleged in the removal notice. The defendant disputes both contentions. The Court finds that defendants did not timely remove the plaintiff's class action petition to federal court. Because the case will be remanded to the state court, this Court will not consider the substantive ERISA arguments.
Plaintiff filed a class action petition in state court against defendants Physicians Health Plan of Greater St. Louis, Inc., and Physicians Health Plan of Midwest, Inc. (PHP).[1] Plaintiff alleges that PHP misrepresented *298 the percentage of the total cost of covered medical services that participating subscribers must pay. Plaintiff seeks class certification for himself and similarly situated others, injunctive and other equitable relief, and damages. Defendant removed the matter to this Court, claiming that the plaintiff received coverage through a multiple employer welfare arrangement plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA). Defendant then filed motions to dismiss and to consolidate the claim with another matter pending in this Court. Plaintiff timely filed a motion to remand on the grounds that the removal was untimely and the Court lacks jurisdiction.

I. Facts

Because the timeliness of defendants' removal of the claim to federal court is the subject of dispute, the Court sets out the relevant facts in some detail. The parties do not dispute the essential facts, but do contest the significance of the relevant events.
Plaintiff filed the underlying class-action petition in the Missouri Circuit Court for the City of Saint Louis. The caption identifies the plaintiff as "Pat McHugh, on behalf of himself and all others similarly situated." The plaintiff's full name, profession, date of birth, insurance plan, and employer are never identified in the petition. In paragraph 1 of the petition the class is alleged to comprise "all persons who were subscribers in health plans governed by ERISA insured or administered by Physicians Health Plan of Greater St. Louis, Inc. and/or Physicians Health Plan of Midwest, Inc." (Emphasis added). By contrast, paragraph 7 identifies plaintiff as "a participant in a PHP health plan not governed by ERISA." (Emphasis added). This "not governed by ERISA" language also appears at paragraph 11 and in the prayer for relief, which identifies the plaintiff class as "[a]ll persons who were subscribers in individual or group health plans (not covered by ERISA) insured or administered by PHP and Blue Shield of Missouri [and several other named health insurance providers]." (Emphasis added). The petition makes no allegations against the other named insurance providers, nor does it explain the relationship, if any, among these other providers and PHP.
The suit was initially filed in state court on October 27, 1995. Plaintiff states that initial service was unsuccessful because plaintiff did not have accurate information regarding the defendants' registered agent. An alias summons was issued on January 9, 1996, and on January 10, 1996, plaintiff's counsel, Jeffrey J. Lowe, hand-delivered a letter to Charles A. Newman, defendants' counsel, enclosing a copy of the petition. Defendants' registered agent was served on January 18, 1996. Defendants have stipulated, however, that two months earlier, on November 9, 1995, Charles Newman forwarded a copy of the petition to Jill Winters, Vice President of Human Resources, Legal and Regulatory Affairs for PHP. Ms. Winters testified at deposition that she did not communicate with her superiors at PHP regarding the class action petition at the time she received it.
On February 28, 1996, Jeffrey Lowe sent a letter to Charles Newman stating that PHP had failed to respond to the petition and was in default. On February 29, 1996, PHP conducted a search of its files and determined there were five "Patrick McHughs" among its insured. On the same date, Charles Newman wrote to Jeffrey Lowe asking for an extension of time to respond to the petition. The letter does not contain a request for further identification of the plaintiff.
On March 11, 1996, the defendants filed a motion for more definite statement, citing the above-noted ambiguities in the petition. On March 18, 1996 plaintiff's counsel supplied further identifying information regarding the plaintiff, including the fact that he was a participant in a health care plan sponsored by the Bar Association of Metropolitan St. Louis (BAMSL). Defendants filed the notice of removal on April 5, 1996, asserting that plaintiff's insurance plan was covered by ERISA, thereby giving this Court jurisdiction. Plaintiff then filed this motion to remand.

II. Timeliness of the Removal

Plaintiff contends that PHP's notice of removal was not timely under 28 U.S.C. *299 § 1446(b). The statute provides the following:
(b) The petition for removal of a civil action shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....
If the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....
The parties do not dispute the dates on which the above described events occurred. At issue is when the thirty-day removal period began. Defendants assert that the period began on March 18, 1996, when they obtained sufficient information to identify the plaintiff and his insurance plan. They cite the second paragraph of § 1446(b) for the proposition that the thirty-day period begins only once removability becomes ascertainable. They assert that the removal became ascertainable only on March 18, 1996, when plaintiff's counsel supplied information further identifying the plaintiff. Plaintiff, by contrast, contends that the thirty-day period began no later than February 29, 1996, when defendants searched their files and identified five "Patrick McHughs". Plaintiff argues that because each of the five had insurance plans fitting defendants' characterization of an ERISA plan,[2] defendants had knowledge that the petition was removable as of February 29, 1996. Plaintiff's communication on March 18, 1996 merely identified which of the five allegedly "ERISA-covered" insureds had filed suit.
The § 1446(b) time limit is not jurisdictional, but instead establishes the procedure to transfer to federal court a case over which the federal court would have had original jurisdiction. St. Louis Home Insulators v. Burroughs Corp., 597 F.Supp. 98, 99 (E.D.Mo.1984). The time limit is mandatory, however, and a timely motion to remand for failure to observe the thirty-day limit will be granted. Id. Removal statutes are to be strictly construed, Kaneshiro v. North American Co. for Life & Health Ins., 496 F.Supp. 452, 460 (D.Haw.1980) (quoting Bradley v. Maryland Casualty Co., 382 F.2d 415, 419 (8th Cir.1967)), and must be construed in favor of state court jurisdiction. Holiday v. Travelers Ins. Co., 666 F.Supp. 1286, 1287 (W.D.Ark.1987). A defendant who fails to remove within the thirty-day period waives the right to remove at a later time. Hubbard v. Union Oil Co. of Cal., 601 F.Supp. 790, 795 (S.D.W.Va.1985). A defendant waiving removal on the initial petition does not regain the opportunity to remove the matter based on subsequent events. Samura v. Kaiser Foundation Health Plan, Inc., 715 F.Supp. 970, 972 (N.D.Cal.1989).
Removal rules promote expedited identification of the proper tribunal. See Roe v. O'Donohue, 38 F.3d 298, 302 (7th Cir. 1994). For example, receipt of a courtesy copy suffices to put defendants on notice and to trigger the thirty-day period. Valle Trade, Inc. v. Plastic Specialties & Technologies, Inc., 880 F.Supp. 499 (S.D.Tex.1995). Similarly, ineffective service that nonetheless results in a defendant's receiving a copy of the complaint begins the thirty-day period. Roe, 38 F.3d at 302-03.
Section 1446(b) establishes two time frames for determining the beginning of the removal period. Under the first paragraph, receipt of the initial pleading triggers the thirty days. Under the second paragraph, receipt of "other paper" starts the thirty-day clock. Some courts have found that the first paragraph of § 1446(b) controls those initial pleadings which do not provide jurisdictional information on their face. Kaneshiro, 496 F.Supp. at 460; Adams v. Lederle Lab., 569 F.Supp. 234, 244 (W.D.Mo.1983). The Kaneshiro court noted that the criteria for removal jurisdiction do not always appear in the plaintiff's state court complaint. Kaneshiro, 496 F.Supp. at 456. A possible inequity results from allowing defendants to await "other *300 paper" before removal, because defendant might delay action on the removal "until such time as he deems it provident to discover from the plaintiff the requisite jurisdictional facts" to support removal. Id. at 457. Allowing defendants to wait when the initial pleading is indeterminate may result in prejudicial delay to plaintiffs and certainly undermines judicial economy. Thus, indeterminate initial pleadings trigger the thirty days "unless they provide `no clue' to the fact that the case is actually removable." Id. at 460.
By contrast, the Fifth Circuit rejects the requirement that defendants investigate indeterminate pleadings to determine removability. Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir.) (holding that initial pleading begins thirty-day period only when the pleading "affirmatively reveals" that jurisdictional amounts are satisfied), reh'g denied, 976 F.2d 732 (5th Cir.1992), cert. denied, 507 U.S. 967, 113 S.Ct. 1402, 122 L.Ed.2d 774 (1993); Leffall v. Dallas Indep. School Dist., 28 F.3d 521 (5th Cir.1994) (applying Chapman to removal based on federal question jurisdiction). The Fifth Circuit reasoned that a rule requiring defendants to investigate the initial pleading and remove within thirty days requires the courts to assess what defendants could have learned through due diligence, and encourages defendants to remove cases prematurely. Chapman, 969 F.2d at 163.
As this case demonstrates, the purpose of promoting prompt determination of the appropriate tribunal is best served by a clearly defined event that starts the thirty-day removal period. The date on which defendants receive initial pleadings is easily determined, as are defendants' diligent efforts to ascertain removability. See Kanter & Eisenberg v. Madison Assoc., 602 F.Supp. 798, 801 (N.D.Ill.1985) ("[I]t would have been a simple matter for defendant's counsel to call [plaintiff's] counsel and ask ..."); Speck v. F.L. Smithe Machine Co., Inc., No. 91-2079 C(2) (E.D.Mo. June 5, 1992) (unreported opinion) (finding that defendants diligently pursued discovery in order to ascertain removal jurisdiction).
Many courts have imposed on defendants a duty to establish both diversity of citizenship and amounts in controversy within thirty days of the initial pleading. See Stokes v. Victory Carriers, Inc., 577 F.Supp. 9, 11 (E.D.Pa.1983) (listing cases requiring defendants to determine diversity of citizenship); Central Iowa Agri-Systems v. Old Heritage Advertising & Publishers, 727 F.Supp. 1304, 1305 (S.D.Iowa 1989); Turner v. Wilson Foods Corp., 711 F.Supp. 624, 626 (N.D.Ga. 1989) (discussing cases requiring defendants to assess amounts in controversy). In such cases, the courts note that clues to the jurisdictional sufficiency exist in the initial petition. See, e.g., Kaneshiro, 496 F.Supp. at 460 (plaintiff's allegation of his residence is a clue to his citizenship).
This case is analogous to those in which defendants must pursue "clues" to diversity of citizenship or amounts in controversy in a timely fashion. The latest possible date on which defendants received the necessary "clue" that the case presented a federal question was February 29, 1996, when they examined their files and determined that at least one of the "Patrick McHughs" was in a plan they considered to be ERISA-covered. Defendant had already removed another suit brought by individuals covered through BAMSL on an ERISA theory. Thus, when they discovered the presence of a "Patrick McHugh" in a BAMSL plan (as well as four other Patrick McHughs), they should have had a "clue" regarding removability.
Defendants ignored earlier opportunities for ascertaining the removability of this matter. Indeed, defendants apparently ignored their initial receipt of the petition altogether. Their search of the files on February 29, 1996 occurred two and one half months after they first received a copy of the petition, and then happened only after plaintiff's counsel informed them they were in default. When defendants then wrote to plaintiff's counsel to request an extension to respond to the petition, they failed to refer to any deficiencies in the petition or to request any additional information about the plaintiff. The first attempt by defendants to obtain information occurred on March 11, 1996, when they filed a motion for a more definite statement in the state court proceeding. That was four months after they received the first *301 copy of the petition in November 1995. Under all of the circumstances presented here, removal was not timely. The Court therefore will order it remanded to the Circuit Court for the City of Saint Louis.
Plaintiff has requested fees and costs incurred in bringing the motion to remand. Pursuant to 28 U.S.C. § 1447(c), an order remanding a case may require payment of just costs, including attorney's fees, at the Court's discretion. See, e.g., Penrod Drilling Corp. v. Granite State Ins. Co., 764 F.Supp. 1146, 1147 (S.D.Tex.1990); IMCO USA, Inc. v. Title Ins. Co. of Minn., 729 F.Supp. 1322, 1324 (M.D.Fla.1990); Hom v. Service Merchandise Co., Inc., 727 F.Supp. 1343, 1345 (N.D.Cal.1990); Elkhart Coop. Equity Exchange v. Day, 716 F.Supp. 1384, 1388 (D.Kan.1989). The Court finds that an award of fees and costs is not warranted in this matter.
Accordingly,
IT IS HEREBY ORDERED that plaintiff's motion to remand [# 17-1] is granted, but plaintiff's request for fees is denied.
IT IS FURTHER ORDERED that the Clerk of the Court shall remand this action to the Missouri Circuit Court for the Twenty-Second Judicial Circuit (St. Louis City) from which it was removed.
NOTES
[1] Defendants state that PHP-Midwest is an inactive subsidiary of PHP-St. Louis that has no employees or operations. This memorandum and order refers to defendants jointly as "defendants" or "PHP".
[2] Plaintiff does not concede that ERISA applies here, but merely asserts that under defendants' argument that ERISA applies, it applies equally to all five Patrick McHughs.